**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1049

JOSE IVAN TREJO TEPAS,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 9, 2023                                    Decided: July 10, 2023

Before NIEMEYER, QUATTLEBAUM, and RUSHING, Circuit Judges.

Petition for review denied by published opinion. Judge Niemeyer wrote the opinion, in which Judge Quattlebaum and Judge Rushing joined.

**ARGUED:** Ronald Darwin Richey, LAW OFFICE OF RONALD D. RICHEY, Rockville, Maryland, for Petitioner. Andrew Nathan O'Malley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C, for Respondent. **ON BRIEF:** Brian M. Boynton, Principal Deputy Assistant Attorney General, Cindy S. Ferrier, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C, for Respondent.

NIEMEYER, Circuit Judge:

After Jose I. Trejo Tepas, a native and citizen of El Salvador, applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), the immigration judge ("IJ") denied his application and ordered that Trejo Tepas be removed to El Salvador.  The IJ explained that while Trejo Tepas had left El Salvador because of a genuine fear of gangs, neither he nor his family had had any encounters with gang members.  Because the basis for his fear was simply a "generalized" fear of criminal gang members and violence in El Salvador, the IJ found that he was ineligible for relief.

On appeal to the Board of Immigration Appeals ("BIA"), Trejo Tepas argued that he had proceeded pro se before the IJ and that the IJ had failed to develop the record, as required by *Quintero v. Garland*, 998 F.3d 612, 622 (4th Cir. 2021) (holding that immigration judges have a "duty to develop the record in immigration court proceedings").  He argued that he was not advised of the governing procedures and that the IJ did not sufficiently probe his factual circumstances.  He requested that his case be remanded to the IJ.  The BIA concluded, however, that the IJ had indeed fulfilled the requirements of *Quintero* and affirmed.

In the particular circumstances of this case, we conclude that the BIA did not err and affirm its decision.

I

In April 2016, Trejo Tepas sought admission into the United States at the Paso del Norte Port of Entry in El Paso, Texas.  He was 16 years old, unaccompanied by a parent or

2

guardian, and lacked a valid entry document.  After he was served with a Notice to Appear charging him with being subject to removal, he was taken into the custody of the Department of Health and Human Services' Office of Refugee Resettlement.  After two weeks, however, he was released into the care of his father, who was then living in Maryland.

Trejo Tepas and his father thereafter appeared at three hearings — in July 2016, May 2017, and December 2017 — and on each occasion, the hearing was continued to give them more time to find a lawyer to represent Trejo Tepas.  At a fourth hearing, in May 2019, Trejo Tepas again appeared pro se, and he conceded that he had applied for admission into the United States without a valid entry document.  The IJ therefore found that he was subject to removal as charged.  When the IJ asked Trejo Tepas whether he was "afraid to go back to El Salvador," Trejo Tepas replied that he was, and the IJ then advised him to take an asylum application.  The IJ further noted that Trejo Tepas was being provided with "instructions or information that [he] might be able to use to explain why [he] did not file [his] application for asylum within one year."  The IJ advised Trejo Tepas that prior to the next hearing, he would need to submit "any paperwork that [he] want[ed] the Court to consider when . . . telling [his] side of the story, including letters from people who might be able to help [him] tell [his] story about why [he] [did not] want to go back to El Salvador."  He also told Trejo Tepas that he should identify "any witnesses that [he] want[ed] to help [him] tell [his] side of the story."  And finally, the IJ "strongly advise[d]" Trejo Tepas "to find an attorney."  At the close of the hearing, Trejo Tepas was given a written notice that his next hearing would take place on March 2, 2020.

3

While not referenced during the May 2019 hearing, the record indicates that Trejo Tepas had actually filed an application for asylum, withholding of removal, and relief under CAT a year earlier — on May 2, 2018 — when he was 18 years old. That application reflected that it had been prepared on Trejo Tepas's behalf by someone associated with Catholic Charities' Pro Se Asylum Clinic. The application indicated that Trejo Tepas was seeking asylum and withholding of removal based on his membership in a particular social group, although it did not identify the group. It explained that Trejo Tepas feared returning to El Salvador because he "fear[ed] being abused, beaten or killed by [the] gangs in [his] home country because [he] was not part of their gang." But it acknowledged that neither he nor his family, nor any close friends or colleagues, had "ever experienced harm or mistreatment or threats in the past by anyone." Attached to the application were several reports regarding country conditions in El Salvador.

At the March 2, 2020 hearing, at which Trejo Tepas again appeared pro se, he confirmed that a person from Catholic Charities had helped him complete his 2018 application, and he reaffirmed its contents. In response to questioning by the IJ and with the assistance of an interpreter, Trejo Tepas testified that he had come to the United States because "[i]n [his] country, [he] couldn't go to school [and] couldn't go out," as "[i]t was very dangerous" "[b]ecause of the gang members." At that point, the IJ probed further into the circumstances of his interactions with gang members:

Q:    Did gang members ever approach you directly?

A:    Yes, nearby — near — close-by, because they killed classmates.

4

Q:    The question is, did any gang members ever confront you or have an encounter with you directly?

A:    No, but I was in constant fear. I couldn't go out, I couldn't do anything. I, I couldn't do anything because of that fear. I wanted a better future.

During further questioning by the IJ, Trejo Tepas acknowledged that gang members had not had "any encounters [with] or approach[ed] anyone in [his] family," but, he said, his family members were also "fearful to go out." He testified that he had stopped going to school after he finished the ninth grade because his school "was [in] a city [where] there was a lot of danger" because of the gangs.

After exploring Trejo Tepas's circumstances, the IJ asked Trejo Tepas if there was "anything else that [he] would like the Court to know about why [he] should not have to go back to El Salvador." Trejo Tepas responded simply that he was "scared . . . that something [could] happen to [him]." He then confirmed that he had nothing further to say.

Based on the record, including Trejo Tepas's application for relief and his testimony, the IJ denied Trejo Tepas's request for relief and ordered that he be removed to El Salvador. At the outset of her decision, the IJ found that Trejo Tepas was credible and that his fear of returning to El Salvador was "subjectively genuine." The IJ also acknowledged that on an objective basis, the evidence of country conditions supported the fact that there remained a high level of crime in El Salvador. But the IJ found further that Trejo Tepas had not experienced any past harm and also that he had "not shown a nexus between a well-founded fear of future persecution and a protected ground." The IJ told Trejo Tepas that she "recognize[d] . . . that there's a reasonable reason for you to fear living

5

[in El Salvador] because there is such a high level of crime [there]. But legally, to be granted asylum, you need more than just that you fear the gangs in El Salvador." In denying CAT relief, the IJ also noted that there was "no evidence" that it was "more likely than not that [Trejo Tepas] would be tortured in the future in El Salvador with the consent or acquiescence of the government."

Following the March 2, 2020 hearing, Trejo Tepas obtained counsel and filed an appeal to the BIA, basing his argument on our intervening decision in *Quintero*. He argued that "Immigration Judges have a legal duty to fully develop the record in the cases that come before them," quoting *Quintero*, 998 F.3d at 626, and that the IJ has the responsibility "to ensure that relevant evidence is entered into the record." He claimed that the IJ had failed to perform those duties.

The BIA dismissed Trejo Tepas's appeal by a decision dated December 17, 2021. It found that "the record reflect[ed] that the [IJ] fulfilled [her] duty to inform [Trejo Tepas] of all relief from removal for which he was apparently eligible," noting that the IJ had "inquired of [his] fear of returning to El Salvador" and had "provided him with the appropriate application to file a claim for asylum and related relief." It also found that the IJ had adequately developed the record. The BIA reasoned that unlike in *Quintero*, where the alien's testimony "yielded sufficient facts to put the [IJ] on notice of a particular social group that could potentially serve as [a] basis for a viable asylum claim," the testimony of Trejo Tepas did not put the IJ on such notice, and the IJ had "elicited sufficient facts from [him] to understand the nature of his claim." The BIA noted that Trejo Tepas had "unequivocally indicated that . . . the sole basis for his asylum claim" was his "fear that he

6

would be abused, beaten, or killed by gang members because he was not himself a gang member." In sum, it concluded that the IJ had "adequately developed the record" and "properly determined that the basis for [Trejo Tepas's] claims for relief was simply a generalized fear of criminal gang members and violent conditions in El Salvador." The BIA thus affirmed the IJ's decision.

From the BIA's order dismissing Trejo Tepas's appeal, Trejo Tepas filed this petition for review.

II

Trejo Tepas contends first that initial jurisdiction over his asylum application properly lay with United States Citizenship and Immigration Services ("USCIS"), rather than the IJ, because he entered the United States as an "unaccompanied alien child." *See* 8 U.S.C. § 1158(b)(3)(C). He argues that "the BIA should have remanded [his] asylum proceedings back to the IJ to then allow [him] the opportunity to apply for asylum before USCIS." He argues further that this result is required by a preliminary injunction entered by the district court in the ongoing class action of *J.O.P. v. DHS*, 338 F.R.D. 33 (D. Md. 2020), *appeal held in abeyance pending settlement discussions*, No. 21-1187 (4th Cir. July 12, 2021).

The government responds that Trejo Tepas failed to exhaust this issue administratively and that, as a result, we lack jurisdiction over it pursuant to 8 U.S.C. § 1252(d)(1) (providing that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right"). In

7

advancing this argument, the government relies on cases like *Cabrera v. Barr*, 930 F.3d 627, 631 (4th Cir. 2019), and *Massis v. Mukasey*, 549 F.3d 631, 638 (4th Cir. 2008), which concluded that this exhaustion requirement was jurisdictional.

The Supreme Court has, however, held recently that § 1252(d)(1) is not jurisdictional but instead represents "a claim-processing rule . . . 'prescribing the method by which the jurisdiction granted the courts by Congress is to be exercised.'" *Santos-Zacaria v. Garland*, 143 S. Ct. 1103, 1110, 1114 (2023) (cleaned up) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004)). Nonetheless, the Court recognized that § 1252(d)(1) remains a mandatory claim-processing rule, *id.* at 1115, and consequently, if Trejo Tepas failed to comply with it, as the government contends, it would be a basis for denying review of his claim that his application should have been adjudicated in the first instance by USCIS, rather than an IJ.

In this case, Trejo Tepas did include this jurisdictional argument in the body of his Notice of Appeal to the BIA. But in the same notice, he checked a box indicating that he intended to file "a separate written brief or statement." This question on the appeal form was accompanied by a warning that if he checked the box but then failed to file such a brief or statement, the BIA would be authorized to "summarily dismiss [his] appeal." *See* 8 C.F.R. § 1003.1(d)(2)(i)(E) (authorizing "[a] single Board member or panel [to] summarily dismiss any appeal or portion of any appeal" on that ground). In the brief that Trejo Tepas subsequently filed, he made no mention at all of his argument that the IJ lacked initial jurisdiction because of his status as an unaccompanied alien child. Indeed, the brief stated that one "issue [was] presented for review" — "[w]hether the Immigration Judge

8

failed to fully develop the record, depriving [Trejo Tepas] of a full and fair hearing."

Moreover, in developing this argument in his brief, he made statements that directly

contradicted his jurisdictional argument, asserting that his case should "be remanded *to the*

*Immigration Court* for further fact-finding and reconsideration of his applications for

asylum, withholding of removal and relief pursuant to the Convention Against Torture."

(Emphasis added).   As a consequence, the BIA addressed only the argument that Trejo

Tepas included in his brief — that the IJ failed to fully develop the record — and not the

jurisdictional issue.

In these circumstances, where Trejo Tepas filed a brief on appeal to the BIA that

did not include the initial jurisdictional issue he now seeks to raise and where the BIA did

not address it, we conclude that he failed to exhaust his administrative remedies as to his

argument that USCIS, rather than an IJ, had initial jurisdiction over his asylum application.

*See Claudio v. Holder*, 601 F.3d 316, 319 (5th Cir. 2010) ("[O]nce a petitioner elects in his

notice of appeal to file a brief, that brief becomes the operative document through which

any issues that a petitioner wishes to have considered must be raised"); *Abebe v. Mukasey*,

554 F.3d 1203, 1208 (9th Cir. 2009) (en banc) (per curiam) ("When a petitioner files no

brief and relies entirely on the notice of appeal to make an immigration argument, as he

may do before the BIA, *see* 8 C.F.R. § 1003.38(f), then the notice of appeal serves in lieu

of a brief, and he will be deemed to have exhausted all issues raised therein.  But when a

petitioner does file a brief, the BIA is entitled to look to the brief for an explication of the

issues that petitioner is presenting to have reviewed"); *Hassan v. Gonzales*, 403 F.3d 429,

433 n.5 (6th Cir. 2005) (recognizing that "arguments presented in the notice of appeal and

9

not adopted in [a] subsequently filed brief are waived, unless the BIA addresses them in its decision" because "the arguments presented [in the brief] supersede the statements made in the preliminary notice of appeal"). *But see Hoxha v. Holder*, 559 F.3d 157, 163 (3d Cir. 2009) (holding that an asylum applicant had administratively exhausted an issue where he included it in his notice of appeal but did not discuss it in a subsequently filed brief and the BIA did not address it). Because Trejo Tepas failed to exhaust his administrative remedies, as required by § 1252(d)(1), we deny review of his claim that USCIS and not an IJ should have decided his asylum application in the first instance.[*]

III

For his main argument on appeal, Trejo Tepas contends that the IJ did not adequately develop the record, as required by our decision in *Quintero v. Garland*, 998 F.3d 612 (4th Cir. 2021), and that the BIA therefore erred in finding that the IJ had fulfilled the requirements of *Quintero*. He argues that the IJ failed, among other things, to "ensure that relevant evidence and facts [were] entered into the record" by "inquiring into all relevant facts"; to "sufficiently explain the procedures involved in the hearing and the relevant legal requirements in simple terms," including "what a particular social group is and/or what kind of evidence may be relevant to his claim"; and "to help [him] articulate a

---

[*] Even on the merits, Trejo Tepas's procedural claim is questionable because shortly after he entered the United States, he was released into the care of his father, at which point he was no longer an "unaccompanied alien child." *See* 6 U.S.C. § 279(g)(2). Moreover, when he first filed his application for asylum in May 2018, he was an adult. *See id.*; *see also* 8 U.S.C. § 1158(b)(3)(C) (providing that "[a]n asylum officer . . . shall have initial jurisdiction over any asylum application filed by an unaccompanied alien child").

cognizable social group supported by [the] facts." Accordingly, he requests that we remand the matter for another hearing before the IJ.

The BIA's decision addressing this claim concluded that Trejo Tepas's application and testimony failed to rise to the level of the circumstances presented in *Quintero* and that the IJ "elicited sufficient facts" through her questioning of Trejo Tepas to make clear that his claim was based simply on "a generalized fear of criminal gang members and violent conditions in El Salvador" in circumstances where "he had not been confronted by or had any encounter with gang members." Thus, there was "nothing in [Trejo Tepas's] asylum application or testimony to indicate that there was an articulable particular social group that [would be] cognizable for asylum purposes." The BIA thus concluded that "*[u]nder the circumstances*, [it was] satisfied that the Immigration Judge adequately developed the record." (Emphasis added).

The question thus presented is whether the IJ satisfied the legal "duty to fully develop the record" in a manner "responsive to the particular circumstances of [Trejo Tepas's] case," *Quintero*, 998 F.3d at 628–29 (cleaned up), including whether Trejo Tepas made a "sufficient *factual* showing of [his] eligibility for relief" to give the IJ the additional "duty to flesh out those facts and to help [Trejo Tepas] articulate a legally cognizable particular social group based on [those] factual circumstances," *id.* at 638. In considering this issue, we turn first to *Quintero*.

In *Quintero*, the petitioner, a citizen of El Salvador, appeared pro se before the IJ for a hearing on his application for asylum, withholding of removal, and CAT protection. He testified that he had joined MS-13 as a teenager, but when he realized that he had made

11

a mistake and told the gang that he wanted to leave, gang members beat him and threatened repeatedly to kill him. *Quintero*, 998 F.3d at 619–20. He further testified that gang members had murdered his cousin when his cousin tried to leave the gang. *Id.* at 619. The IJ denied the application for relief, finding that "no reliable evidence in the record support[ed] [his] eligibility for asylum or withholding of removal." *Id.* at 620. The BIA affirmed. *Id.* The petitioner then filed a petition for review, arguing specifically that "the immigration judge had a duty to fully develop the record as to two particular social groups plainly supported by his factual allegations — former MS-13 members in El Salvador who left the gang without permission and family members of . . . his murdered cousin." *Id.* at 622.

In reviewing the BIA's decision, we began generally by recognizing that in immigration court proceedings, IJs have a "duty to develop the record" and explained that this duty flowed from three "sources of authority." *Quintero*, 998 F.3d at 623; *see also id.* at 626 & n.13. *First*, we pointed to a provision of the Immigration and Nationality Act that provides that in removal proceedings, IJs are required to "administer oaths, receive evidence, and *interrogate, examine, and cross-examine* the alien and any witnesses." 8 U.S.C. § 1229a(b)(1) (emphasis added); *see also Quintero*, 998 F.3d at 623, 626. In this manner, the IJ is "not merely the fact finder and adjudicator but also has an obligation to establish the record." *Quintero*, 998 F.3d at 623 (quoting *Yang v. McElroy*, 277 F.3d 158, 162 (2d Cir. 2002)). *Second*, we noted that removal proceedings are procedurally analogous to proceedings addressing disability claims under the Social Security Act, in which administrative law judges "have a similar obligation" "to develop the record." *Id.*

12

at 624, 626. *Finally*, we noted that IJs have a responsibility to fulfill U.S. treaty obligations under the United Nations Convention Relating to the Status of Refugees, under which, despite an applicant's having the burden of demonstrating his claim for relief, the IJ has the "responsibility of ensuring that refugee protection is provided where such protection is warranted by the circumstances of an asylum applicant's claim." *Id.* at 625 (quoting *Matter of S-M-J-*, 21 I. & N. Dec. 722, 723 (BIA 1997)). As a result, the IJ "share[s]" with the applicant "the duty to ascertain and evaluate all the relevant facts." *Id.* (cleaned up). And in addition to relying on these sources for imposing the duty to develop the record, we added that when the applicant is proceeding pro se, there is a "particularly strong need for [these] procedural protections." *Id.* at 627.

The duty to develop the record, as we explained, requires not only explaining legal procedures to the applicant but also "prob[ing] into, inquir[ing] of, and elicit[ing] all facts relevant to [the applicant's] claims." *Quintero*, 998 F.3d at 629. But we also recognized that the scope of the duty "inevitably depends on the particulars of each case." *Id.* at 630. And applying the duty to the particular circumstances then before us, we held that when asylum seekers "make a sufficient *factual* showing of their eligibility for relief, . . . immigration judges . . . have a duty to flesh out those facts and to help applicants articulate a legally cognizable particular social group based on their factual circumstances." *Id.* at 638; *see also id.* at 639.

This all said, we also recognized in *Quintero* that the IJ must not become an advocate but must remain a "neutral arbiter" in what still remains an adversary process. 998 F.3d at 638. And the applicant retains the burden of proving eligibility for the relief

13

he seeks. *Id.* Thus, the IJ's duty to develop the record must respond *to the circumstances that the applicant presents* in furtherance of satisfying *his* burden. In sum, consistent with a policy of providing refugees with a readily accessible process for seeking available relief, *Quintero* imposes on the IJ a duty to develop the record in support of applications for relief, while at the same time requiring the IJ to remain sufficiently neutral so as to be able to function as the arbiter in an adversary proceeding. As we explained, this duty in the context of an immigration proceeding is "hardly different from federal courts' duty to liberally construe *pro se* complaints and to help identify potentially viable legal claims that the plaintiff may not have raised." *Id.*

In this case, the factual circumstances that Trejo Tepas presented — both in his application and through his testimony — were plainly insufficient to support his claims for relief. The IJ, recognizing this, probed into the factual circumstances to determine whether there was more to Trejo Tepas's story. Thus, when Trejo Tepas testified that he came to this country because he could not go to school in El Salvador as "[i]t was very dangerous" "[b]ecause of the gang members," the IJ probed those facts and asked Trejo Tepas whether gang members "ever approach[ed] [him] directly" and whether gang members "ever confront[ed] [him] or [had] an encounter with [him] directly." The IJ also asked whether gang members had "any encounters [with] or approach[ed] anyone in [his] family." The IJ probed when Trejo Tepas had left school and sought to explore the scope of Trejo Tepas's fear. Despite this questioning, Trejo Tepas stood by his testimony that he never had any encounters with gang members and that he and his family were never threatened by gang members. The BIA concluded accordingly that the IJ's inquiries only led to dead

14

ends and that, based on the information that Trejo Tepas had presented, there was "nothing in [his] asylum application or testimony to indicate that there was an articulable particular social group that is cognizable for asylum purposes, or any other protected ground underlying [his] claim that might serve as a viable basis for a grant of asylum or withholding of removal." It concluded that, even with the IJ's assistance, the only thing that Trejo Tepas could present was a "generalized fear of criminal gang members and violent conditions in El Salvador," which could not support a claim for relief.

We conclude that despite the IJ's assistance in developing the record, Trejo Tepas did not make the factual showing necessary for relief. The BIA concluded that nothing more was required from the IJ. And we conclude that the BIA did not err in its recognition that, in the context of this case, the demands of *Quintero* were satisfied.

## IV

Trejo Tepas also contends that the IJ was required to, but did not, inform him of all available relief, particularly "both forms of Voluntary Departure." The BIA concluded that the IJ did provide Trejo Tepas with forms and instructions for filing a claim for asylum and related relief and did instruct him on what he needed to gather and present at the hearing. But as to informing Trejo Tepas about pre-hearing voluntary departure, the BIA concluded that the IJ "was not required to inform" him of such relief "because he did not waive his appeal and [was] [therefore] not eligible for that relief." *See* 8 C.F.R. § 1240.26(b)(1). And as to post-hearing voluntary departure, the BIA noted that Trejo Tepas had "not demonstrated eligibility" for such relief because he had not shown that he had "a valid

15

travel document, the ability to pay for travel, or the willingness to depart pursuant to a voluntary departure order." *See id.* § 1240.26(c).

On appeal, Trejo Tepas has not presented any argument as to why the BIA was wrong in finding him ineligible for either form of voluntary departure. Therefore, we conclude that he has waived the issue. *See Suarez-Valenzuela v. Holder*, 714 F.3d 241, 248 (4th Cir. 2013).

V

Finally, on the merits of his petition, Trejo Tepas contends that the BIA erred in concluding that he failed to satisfy the requirements for asylum and the other relief requested. He claims that he adequately showed that he had a "well-founded fear of future persecution because of his membership" in one or both of the following particular social groups — "an El Salvadorian classmate of youth killed by violent and powerful gang members, and an El Salvadorian witness to school classmates killed by violent and powerful gang members."

An alien bears the burden of proving eligibility for asylum. *See* 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(a). And to be eligible for asylum, an alien must establish that he is a "refugee," 8 U.S.C. § 1158(b)(1), which is defined as a person who is unable or unwilling to return to his home country because of persecution or a well-founded fear of persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion, *id.* § 1101(a)(42)(A). The applicant for asylum must also

16

show that his government is "unable or unwilling to control" the alleged persecution. *Arita-Deras v. Wilkinson*, 990 F.3d 350, 357 (4th Cir. 2021).

The record shows that Trejo Tepas left his country because of fear of gang members. But the IJ found that "no gang member had contacted him, nor anybody in his family, but, nonetheless, he wanted a better future, and he did live in constant fear." The IJ concluded that Trejo Tepas had not established past persecution, nor had he shown a well-founded fear of experiencing harm in the future on account of a protected ground. In affirming, the BIA noted that Trejo Tepas's asylum application expressed "fear that he would be abused, beaten, or killed by gang members because he was not himself a gang member" and that "this was the sole basis for his asylum claim." Moreover, it found that there was nothing in Trejo Tepas's application or testimony "to indicate that there was an articulable particular social group that is cognizable for asylum purposes." On this record, it found that the basis for Trejo Tepas's claims for relief "was simply a generalized fear of criminal gang members and violent conditions in El Salvador," which does not support an asylum claim or the other relief requested.

We cannot conclude that the BIA's conclusions were legally erroneous or lacked evidentiary support — indeed, the facts are not disputed. First, it is significant that, according to his sworn statements, Trejo Tepas had never personally had *any* encounter with gang members directly and had never been threatened or otherwise harmed by them. Similarly, he remained consistent in testifying that gang members never "encounter[ed] or approach[ed] anyone in [his] family." Indeed, in his written application, he stated that neither his family nor his close friends or colleagues ever experienced harm or

17

mistreatment or threats in the past by anyone.  There is simply no indication in the record that Trejo Tepas suffered any past persecution or harm.

Of course, it is not necessary for a person seeking asylum or withholding of removal to have suffered past persecution to be eligible for relief.  The individual could instead demonstrate eligibility based on a well-founded fear of future persecution on account of a protected ground — as relevant here, membership in a particular social group.  *See Camara v. Ashcroft*, 378 F.3d 361, 367 (4th Cir. 2004).  But Trejo Tepas provided no basis to conclude that there was a greater risk that he would be harmed by a member of one of El Salvador's gangs than the risk faced by any other young El Salvadorian male who is not a member of a gang.  And as we have recognized, "General conditions of crime and unrest are insufficient to establish persecution on account of a protected ground."  *Hernandez-Aquino v. Barr*, 770 F. App'x 88, 89 (4th Cir. 2019) (per curiam) (citing *Velasquez v. Sessions*, 886 F.3d 188, 194 (4th Cir. 2017), and *Huaman-Cornelio v. BIA*, 979 F.2d 995, 999–1000 (4th Cir. 1992)).

Trejo Tepas argues nonetheless that the IJ should have explored two social groups — "El Salvadorian classmate[s] of youth killed by violent and powerful gang members" and "El Salvadorian witness[es] to school classmates killed by violent and powerful gang members."  But with respect to the second proposed social group, Trejo Tepas never suggested that he had ever *witnessed* his classmates being killed and that that was the reason he was afraid of being targeted by gang members.  And as for the first group, we simply fail to see how there is even an argument that "El Salvadorian classmate[s] of youth killed by violent and powerful gang members" meets the social-distinction requirement

18

necessary for a group to qualify as a legally cognizable particular social group. *See Oliva v. Lynch*, 807 F.3d 53, 61 (4th Cir. 2015). Moreover, we cannot see any basis for concluding that Trejo Tepas would be able to show that his membership in *that* group would be at least a central reason for gangs to harm him should he be returned to El Salvador. Instead, we agree with the BIA that "[u]nder the circumstances" of this case, "the Immigration Judge . . . properly determined that the basis for [Trejo Tepas's] claims for relief was simply a generalized fear of criminal gang members and violent conditions in El Salvador."

Because Trejo Tepas failed to establish eligibility for asylum, the BIA also correctly concluded that he necessarily could not show that it was more likely than not that he would experience persecution on account of a protected ground, as required for withholding of removal. *See Camara*, 378 F.3d at 367. And as for CAT relief, nothing in the record calls into question the BIA's conclusion that Trejo Tepas failed to show that it was more likely than not that he would be tortured in El Salvador with the consent or acquiescence of a public official. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1).

For the foregoing reasons, we affirm the decision of the BIA and deny Trejo Tepas's petition for review.

PETITION DENIED

19