**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-1014**

───────────────

ELVI YESENIA LOPEZ-REYES,

      Petitioner,

   v.

MERRICK B. GARLAND, Attorney General,

      Respondent.

───────────────

On Petition for Review of an Order of the Board of Immigration Appeals.

───────────────

Argued:  September 19, 2023                    Decided:  December 27, 2023

───────────────

Before KING, Circuit Judge, and MOTZ and FLOYD, Senior Circuit Judges.

───────────────

Petition denied by unpublished per curiam opinion.

───────────────

**ARGUED:**  Anahita Avestaei, WOODWARD & AVESTAEI, PLLC, Silver Spring, Maryland, for Petitioner.  Virginia M. Lum, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Brian Boynton, Principal Deputy Assistant Attorney General, Paul Fiorino, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Elvi Yesenia Lopez-Reyes, a native and citizen of Guatemala, petitions for review of a final order of the Board of Immigration Appeals ("the Board") denying asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The Board upheld the immigration judge's adverse credibility finding and concluded that no independent evidence established that gang members had persecuted Lopez-Reyes in Guatemala on account of her partner's former connections to the military. For the reasons that follow, we deny the petition.

I.

Lopez-Reyes entered the United States without inspection in 2014. The United States Department of Homeland Security issued her a Notice to Appear the same year, charging her as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Lopez-Reyes conceded removability and applied for asylum, withholding of removal, and CAT protection. She contended that members of the Calle 18 gang targeted her in Guatemala because of her relationship with her partner, Jaime Gonzalez, who had past ties to the Guatemalan military. Lopez-Reyes declared that gang members murdered Gonzalez after he refused to work with them and, after his murder, continued to harass and terrorize her and her family. Fearing for her life, Lopez-Reyes fled to the United States.

In support of her application, Lopez-Reyes submitted affidavits from herself, her father, and other family members and friends. She also submitted newspaper articles and

2

government certificates documenting the killing of Gonzalez and his nephew, as well as country-conditions materials on gang activity in Guatemala. Her application also included a psychiatric evaluation diagnosing her with post-traumatic stress disorder ("PTSD") and associated difficulties with concentration and memory.

Problems with Lopez-Reyes's claim emerged at her asylum hearing. At the beginning of the hearing, the Government proposed stipulating to the facts "laid out in [Lopez-Reyes's] affidavit and the psychological evaluation only." The immigration judge replied: "I think that's fine. I don't think that *Matter of Fefe*, 20 I&N Dec. 116, forecloses this, but [Lopez-Reyes] has . . . to take the stand to swear to the contents of the application, and undergo a brief examination by someone, in order to meet the requirements." The immigration judge then swore in Lopez-Reyes and she affirmed the accuracy of the contents of her application. The Government began the brief examination of Lopez-Reyes "to go over the basic facts" of her application. Lopez-Reyes's testimony quickly diverged from statements in her affidavit and in her father's affidavit, and so the immigration judge ordered a "full hearing," noting that she had "concerns about [Lopez-Reyes's] credibility." Full examination of Lopez-Reyes revealed more discrepancies in her account.

At the conclusion of the hearing, the immigration judge denied Lopez-Reyes's application for relief from deportation and ordered her removed to Guatemala. The judge explained that she had made an adverse credibility determination and that no independent evidence in the record demonstrated past persecution of Lopez-Reyes on account of a protected ground. The Board affirmed, upholding the adverse credibility determination

3

and agreeing the record lacked independent corroborating evidence. Lopez-Reyes then filed this petition for review.

## II.

Lopez-Reyes contends that the immigration judge erred in disregarding the stipulation of the parties and holding a full credibility hearing. Before addressing this issue, we must first determine whether the Immigration and Nationality Act bars our consideration of it.

## A.

Noncitizens seeking judicial review of removal orders must first have "exhausted all administrative remedies available to [them] as of right." 8 U.S.C. § 1252(d)(1). "Ordinarily, a petitioner exhausts their administrative remedies by raising an argument challenging the immigration judge's decision in an appeal to the Board of Immigration Appeals." *Perez Vasquez v. Garland*, 4 F.4th 213, 228 (4th Cir. 2021) (cleaned up), *abrogated in part by Santos-Zacaria v. Garland*, 598 U.S. 411, 413, 417 (2023). "Therefore, arguments that a petitioner did not raise before the Board have not been exhausted." *Id.* (cleaned up).

Lopez-Reyes did not exhaust her argument as to the stipulation during her immigration proceedings. *See Tepas v. Garland*, 73 F.4th 208, 214 (4th Cir. 2023). Her counsel did not object to the immigration judge's order for a full credibility hearing, and she mentioned the proposed stipulation only in passing in her appeal to the Board. Nor did the Board address the proposed stipulation in its decision.

4

The Supreme Court has clarified that the exhaustion requirement at Section 1252(d)(1) establishes a claim-processing rule rather than a jurisdictional requirement. *Santos-Zacaria*, 598 U.S. at 413, 417. Because Section 1252(d)(1) sets forth a mandatory claim-processing rule, the court must enforce it when the Government raises a noncitizen's failure to exhaust. *See Tepas*, 73 F.4th at 213. However, parties can forfeit a defense based on failure to comply with a mandatory claim-processing rule. *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019). The issue exhaustion requirement at Section 1252(d)(1) thus "is subject to waiver and forfeiture." *Santos-Zacaria*, 598 U.S. at 423.

In this case, the Government has forfeited a defense based on Lopez-Reyes's failure to exhaust because it did not raise the defense in its brief or during oral argument. "[I]f the Government fails to object promptly" to a party's failure to comply with a mandatory claim-processing rule, "it generally forfeits the right to do so." *See United States v. Oliver*, 878 F.3d 120, 123 (4th Cir. 2017).

We have inherent power to enforce mandatory claim-processing rules on our own initiative, *see id.* at 124, 126 — but we decline to do so today. Agencies can lose out on the benefit of a statute's issue exhaustion requirement if they fail to promptly raise it. *E.g.*, *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 512 (2014). And enforcing issue exhaustion *sua sponte* here would erode the difference between Section 1252(d)(1) establishing a claim-processing rule rather than an unyielding jurisdictional requirement. *See Santos-Zacaria*, 143 S. Ct. at 413, 415–20. Indeed, the Supreme Court in *Santos-Zacaria* rejected the idea that federal courts are absolutely precluded "from considering

5

any issue that had not been presented to the Board in the first instance." *Id.* at 431 n.10 (cleaned up). Accordingly, we turn to Lopez-Reyes's argument as to the stipulation.

B.

The Government disputes at the outset that the parties stipulated to credibility at all. When the immigration judge asked if the Government would "be stipulating to credibility in this case," the Government responded that "as the facts are laid out in the affidavit and the psychological evaluation only, yes." At oral argument the Government contended that, with these words, it stipulated only that the facts in Lopez-Reyes's affidavit "match" the facts presented in the psychological evaluation.

A fuller review of the record proves the Government wrong on this point. Earlier in the hearing, when first proposing the stipulation, the Government said it had reviewed Lopez-Reyes's application and concluded that "the facts appear to be the facts. The Government did not find any inconsistencies between the psychological evaluation and the respondent's affidavit. In light of moving the hearing forward and not wasting anyone's time, the Government is willing to stipulate to the facts being the facts." The Government then added that it still disputed the legal basis for Lopez-Reyes's asylum claim and would "reserve for argument" that issue. The Government thus proposed stipulating to Lopez-Reyes's credibility as to the facts — "the facts being the facts" — to focus the hearing on the legal issues presented.

But Lopez-Reyes does not clearly explain why the immigration judge's treatment of the stipulation would entitle her to relief. We construe her argument as a procedural due process claim, which requires showing "(1) that a defect in the proceeding rendered it

6

fundamentally unfair and (2) that the defect prejudiced the outcome of the case."
*Atemnkeng v. Barr*, 948 F.3d 231, 241 (4th Cir. 2020). Her claim fails because the immigration judge did not err in conditioning acceptance of the proposed stipulation on a brief examination, or by holding a full credibility hearing once inconsistencies emerged.

The Board's precedent instructs that an immigration judge presiding over an asylum proceeding may accept the parties' credibility stipulation, i.e., "that the applicant's testimony would be entirely consistent with the written materials and that the oral statement would be believably presented." *See Matter of Fefe*, 20 I. &. N. Dec. 116, 118 (BIA 1989).[1] To do so, the applicant must "take the stand, be placed under oath, and be questioned as to whether the information in the written application is complete and correct." *Id. Matter of Fefe* does not define the scope of the initial questioning of the asylum-seeker on the completeness and correctness of the application, nor does it require an immigration judge to accept a stipulation. *Matter of Fefe* merely explains how a credibility stipulation can meet the "minimum" procedural requirements of an asylum hearing. *Id.* at 118. Moreover, we have recognized that the Board ordinarily "consider[s] the full examination of an applicant to be an essential aspect of the asylum adjudication

---

[1] The Department of Justice and the Department of Homeland Security have since updated the procedural regulations analyzed in *Matter of Fefe*. *See* 20 I. & N. at 117 (providing that an asylum-seeker "shall be examined under oath on his application and may present evidence on his behalf" (quoting 8 C.F.R. § 236.3(a)(2) (1988))). However, the current procedural regulations regarding asylum and withholding of removal contain substantially similar language. 8 C.F.R. § 1240.11(c)(3)(iii). This court and the Board have accordingly continued to reference *Matter of Fefe*'s guidance. *Atemnkeng*, 948 F.3d at 242; *Matter of E-F-H-L*, 26 I. & N. Dec. 319, 322–24 (BIA 2014), *vacated as moot*, 27 I. & N. Dec. 226 (A.G. 2018).

process for reasons related to fairness to the parties and to the integrity of the asylum process itself." *Atemnkeng*, 948 F.3d at 242 (quoting *Matter of Fefe*, 20 I. & N. at 118). "[T]here are often significant differences (either discrepancies or meaningful omissions) between the written and oral statements in an asylum application; these differences cannot be ascertained unless an applicant is subjected to direct examination." *Id.* (emphasis removed) (quoting *Matter of Fefe*, 20 I. & N. Dec. at 118).

The immigration judge did not err in ordering a "brief examination" to try "to go over the basic facts" with Lopez-Reyes prior to accepting the proposed stipulation. True, parties in civil litigation are entitled to stipulate to factual matters and remove them from dispute. *Christian Legal Soc'y Ch. of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 676–78 (2010). But a court "may totally accept or reject the stipulation" the parties have proposed. 83 C.J.S., Stipulations § 18 (2023); *see also Christian Legal Soc'y*, 561 U.S. at 676 (characterizing that treatise "[a]s a leading legal reference"). Moreover, "'unlike an Article III judge[,]' an immigration judge 'is not merely the fact finder and adjudicator.'" *Quintero v. Garland*, 998 F.3d 612, 623 (4th Cir. 2021) (quoting *Yang v. McElroy*, 277 F.3d 158, 162 (2d Cir. 2002)). Immigration judges have an additional "legal duty to fully develop the record in the cases that come before them." *Id.* at 626 (citing 8 U.S.C. § 1229a(b)(1)). Requiring an initial brief examination of Lopez-Reyes thus comported with the immigration judge's authority over proposed stipulations and independent obligation to develop the record.

Only *after* inconsistencies emerged did the immigration judge order "a full hearing" to address the court's "concerns about [Lopez-Reyes's] credibility." We find that

reasonable as well. The "duty to develop the record must respond" to an applicant's presentation of her claim, and the immigration judge appropriately "probed into the factual circumstances" once Lopez-Reyes's credibility problems arose. *See Tepas*, 73 F.4th at 216. Letting glaring discrepancies go unaddressed would have meant neglecting "the duty to ascertain and evaluate all the relevant facts." *Id.* (quoting *Quintero*, 998 F.3d at 625).

The remaining authorities Lopez-Reyes cites in support of her position come up short. She first points to agency regulations and guidance that encourage the use of stipulations in immigration proceedings to narrow the issues in dispute. 8 C.F.R. § 1003.21(a)-(b); Immigration Court Practice Manual § 4.18 (Nov. 16, 2020). But like *Matter of Fefe*, these authorities do not require that immigration judges accept stipulations. Indeed, when the Government proposed to stipulate to credibility at the beginning of Lopez-Reyes's asylum hearing, it made clear that the stipulation "would be absolutely at . . . the pleasure of the Court." We do not face a situation where an immigration judge accepted a credibility stipulation one day, only to ambush the noncitizen the next.[2]

---

[2] Lopez-Reyes at oral argument relied on two more Board decisions. Neither assist here. The first, *Matter of Yewondwosen*, advises that the parties' "agreement on an issue or proper course of action should, in most instances, be determinative." 21 I. & N. Dec. 1025, 1026 (BIA 1997) (en banc). That decision, however, considered a noncitizen's unopposed motion to remand deportation proceedings to pursue adjustment of status — not a proposed stipulation going to the merits of an adjudication. *Id.* at 1024. The second, *Matter of A-P-*, instructs immigration judges to adequately explain their decisions to facilitate appellate review, but does not discuss stipulations either. 22 I. & N. Dec. 468, 474 (BIA 1999) (en banc).

III.

Having resolved the stipulation issue, we turn to the Board's order denying Lopez-Reyes's application for asylum, withholding of removal, and CAT protection.

To demonstrate eligibility for asylum, applicants must show that "they are unable or unwilling to return to their country of nationality because of past persecution 'or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion.'" *Ilunga v. Holder*, 777 F.3d 199, 206 (4th Cir. 2015) (quoting 8 U.S.C. § 1101(a)(42)). "An applicant can establish eligibility simply by providing credible testimony about his or her experiences." *Id.* An adverse credibility finding, conversely, can doom an asylum application. *Camara v. Ashcroft*, 378 F.3d 361, 369 (4th Cir. 2004). An asylum-seeker's "'well-founded fear' of persecution" has a subjective element, "and the subjective element cannot generally be proved other than through the applicant's testimony." *Id.*

We review adverse credibility determinations for substantial evidence. *Herrera-Alcala v. Garland*, 39 F.4th 233, 244 (4th Cir. 2022). We consider both the Board's decision and the immigration judge's decision to the extent that the Board adopted or incorporated it. *Id.* Where "the record plausibly could support two results: the one the [agency] chose and the one the petitioner advances, reversal is only appropriate where the court finds that the evidence not only supports the opposite conclusion, but *compels* it." *Id.* (quoting *Tang v. Lynch*, 840 F.3d 176, 180 (4th Cir. 2016)).

The Board relied on two inconsistencies in Lopez-Reyes's testimony to affirm the immigration judge's adverse credibility finding. The first of these — concerning when and

10

why gang members began to target Lopez-Reyes and her family — provides substantial evidence for an adverse credibility determination.

Lopez-Reyes and her father declared in their affidavits that gang members had long targeted their family's secondhand clothing store for extortion; such extortion "was an unfortunate part of everyday life in our town." At her asylum hearing, however, Lopez-Reyes repeatedly testified that the family's problems with gang members started only *after* her relationship with Gonzalez began: "Before I met Jaime Gonzalez, we never had any type of gang incident." When confronted with the inconsistent affidavits, she said she did not remember making the prior statement.

This unexplained inconsistency provides a "specific, cogent reason[] for making an adverse credibility determination." *Djadjou v. Holder*, 662 F.3d 265, 273 (4th Cir. 2011).[3] The discrepancy "is not merely incidental to her asylum claim," but goes directly to the asserted cause of the persecution: Lopez-Reyes's relationship with her partner Gonzalez. *Camara*, 378 F.3d at 369. The Board furthermore considered Lopez-Reyes's explanation that PTSD and related memory problems caused her to make inconsistent statements. Although Lopez-Reyes "gave a plausible explanation" for the inconsistencies, the Board remained "free to reject her explanation." *See id*. Given the diverging accounts, the Board

---

[3] The Board also relied on a second set of inconsistencies regarding the gang's stated motives for targeting Lopez-Reyes and whether she ever directly spoke with them. We do not address this issue further because Lopez-Reyes's inconsistent statements on when the gang began targeting her and her family provide substantial basis for an adverse credibility finding.

further concluded that it could not determine from the record why Lopez-Reyes was targeted.

The Board also correctly concluded that the record lacked independent evidence to corroborate Lopez-Reyes's account of past persecution. Independent record evidence can establish past persecution despite an adverse credibility finding. *Camara*, 378 F.3d at 369–70. The affidavits from Lopez-Reyes's "family and friends are not objective evidence in this context." *Djadjou*, 662 F.3d at 276.

Lopez-Reyes argues that the Board erred in disregarding Gonzalez's autopsy report and death certificate, news articles covering his murder and his nephew's murder, and country-conditions materials describing gang activity in Guatemala. But the Board acknowledged these submissions and duly concluded that, though these materials provided "evidence that [Gonzalez] was killed," they did not establish past persecution. The autopsy report, death certificate, and news clippings do not indicate that gang members murdered Gonzalez or targeted Lopez-Reyes. The country-conditions materials speak generally to problems of gang violence in Guatemala, but they do not report that gangs target military families, and thus lack the specificity needed to corroborate her claim. *Cf. Camara*, 378 F.3d at 370 (describing as "strong circumstantial evidence" of political persecution an asylum-seeker's notice of escape from prison, arrest warrant, proof of membership in a political party, and materials reporting state persecution of that political party).

The Board also correctly denied withholding of removal given Lopez-Reyes's failure to establish eligibility for asylum. "[B]ecause the standard for withholding of removal is higher than the standard for asylum, if applicants cannot demonstrate asylum

12

eligibility, their applications for withholding of removal will necessarily fail as well." *Djadjou*, 662 F.3d at 272.

Finally, we affirm the denial of Lopez-Reyes's application for CAT protection. To obtain CAT protection, an applicant must "show that 'it is more likely than not that he or she would be tortured' in the country of removal." *Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 971 (4th Cir. 2019) (quoting 8 C.F.R. § 1208.16(c)(2)). To qualify as "torture," an act must occur "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* (quoting 8 C.F.R. § 1208.18(a)(1)). We review the Board's factual findings for substantial evidence and its legal determinations de novo. *Id.* at 972.

Lopez-Reyes contends that the Board did not dispute Lopez-Reyes's account regarding "Armando," a corrupt military officer "who worked with different gangs" and who tried "to recruit other officers for the same purpose." Lopez-Reyes asserted that Armando tried to recruit Gonzalez, persecuted Gonzalez when he refused, and continued to harass Lopez-Reyes after Gonzalez's killing. But the Board did not find Lopez-Reyes credible, and we see no other record evidence regarding this government official.

Lopez-Reyes argues that she needs to only show general collusion between the police and the gang for purposes of CAT. *Id.* While a failure to "meaningfully engage" with record evidence indicating police involvement with torture can give rise to reversible error, the Board did not do that here. *See Rodriguez-Arias*, 915 F.3d at 974–75. The country-conditions materials submitted describe Guatemalan law enforcement as frequently corrupt and ineffective, but they do not report collusion between law

13

enforcement and Calle 18 or other gangs.  Nor do they indicate that military families are especially targeted.

## IV

For the foregoing reasons, the petition for review is

*DENIED.*

14