**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-2163**
_____

LEYDIS ARELY RIVERA-JOVEL; E.D.C.R.,

        Petitioners,

    v.

MERRICK B. GARLAND, Attorney General,

        Respondent.

_____

On Petition for Review of an Order of the Board of Immigration Appeals.

_____

Submitted:  December 15, 2023             Decided:  March 11, 2024

_____

Before THACKER, HARRIS, and RUSHING, Circuit Judges.

_____

Petition denied by unpublished per curiam opinion.

_____

**ON BRIEF:**  Meghan M. Phillips, VANDERPOOL, FROSTICK & NISHANIAN P.C., IMMIGRANTS FIRST PRACTICE GROUP, Manassas, Virginia, for Petitioners.  Brian Boynton, Principal Deputy Assistant Attorney General, Nancy Friedman, Senior Litigation Counsel, Gregory A. Pennington, Jr., Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Leydis Rivera-Jovel ("Rivera") and her son, E.D.C.R., (collectively, "Petitioners") are natives and citizens of El Salvador. Petitioners seek review of the Board of Immigration Appeals' ("BIA") order affirming the decision of the immigration judge ("IJ") denying their applications for asylum, withholding of removal, and protection pursuant to the Convention Against Torture (the "CAT").

Petitioners argue that the BIA erred in affirming the IJ's rejection of their asylum, withholding of removal, and CAT claims. On their asylum claim, they make two arguments: (1) the IJ failed to develop the record; and (2) the IJ and BIA disregarded country condition reports in concluding Petitioners failed to establish a nexus between their protected grounds and alleged persecution. Petitioners argue they are entitled to withholding of removal because they presented sufficient evidence to succeed on their claim, particularly, that they establish nexus. And finally, they contend that they are eligible for CAT protection, asserting that the BIA erred in holding that their CAT claim was waived. The Attorney General ("Respondent") argues that the BIA did not err in affirming the IJ's rejection of Petitioners' asylum, withholding of removal, and CAT claims. Respondent argues that Petitioners failed to exhaust their argument that the IJ failed to develop the record on their asylum claim, and they failed to exhaust their CAT claim by not raising it before the BIA. On asylum and withholding of removal, Respondent argues that the IJ and BIA did not err in holding that Petitioners failed to establish nexus to a protected ground, and therefore, their asylum and withholding of removal claims fail.

2

Having considered the arguments presented and reviewed the record, we conclude that the BIA did not err and that substantial evidence supports the denial of relief. Accordingly, we deny the petition for review.

I.

A.

Petitioners fled to the United States from El Salvador in June 2014 after receiving a death threat from members of the MS-13 gang. In 2013, Rivera opened a store selling grain. Sometimes, MS-13 gang members would come to the store and demand small items, which Rivera gave them. Gang members would make similar demands of other small businesses.

Rivera's store was successful, allowing her to buy a house in the area. In late April 2014, MS-13 gang members painted graffiti on Rivera's house, with the letters "MS" on the wall. J.A. 167.[*] Rivera tried to erase the graffiti. When the gang members saw her, they came to her house, and declared that the wall was theirs and that she should not touch the graffiti. Additionally, the gang members told Rivera that a jailed member of the gang wanted to speak with her, but she refused. Rivera was afraid of what the jailed gang member would say or ask her to do.

The next day, three gang members came to Rivera's house, again telling Rivera that a gang member wanted to speak with her from jail. Rivera refused. Later that afternoon, twelve armed gang members showed up at the corner across from Rivera's house. Rivera

---

[*] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

called the police and told them she was afraid of the gang members because they were armed. Two hours later, a police patrol car drove by her house but did not stop to check on Rivera.

Two days later, the gang members returned and again told Rivera to speak with the jailed gang member. Again, Rivera refused. The gang members became upset, and they explained to Rivera that she had to talk to the jailed member the next time they came back, "because if not, we're going to kill you . . . ." J.A. 171. The gang members also threatened E.D.C.R.'s father, who similarly refused to speak to the jailed gang member. Rivera did not file a police report after this death threat.

Fifteen days later, Rivera fled El Salvador with E.D.C.R., who was four years old at the time.

B.

When Petitioners arrived in the United States, they were charged as inadmissible and put into removal proceedings. Petitioners conceded their removability but sought asylum, withholding of removal, and CAT protection.

Rivera based her asylum claim on allegations that gang members persecuted her on account of her membership in a proposed particular social group ("PSG") of "Salvadorian female heads of household who are raising a minor child." J.A. 152. Her son E.D.C.R. alleged past persecution on account of his membership in the nuclear family of Rivera. Rivera provided the sole testimony to support her and E.D.C.R's applications.

The IJ denied Petitioners' asylum, withholding of removal, and CAT claims. Despite finding Rivera's testimony credible, the IJ concluded that the gang members'

4

single death threat did not amount to past persecution. The IJ also concluded that Rivera's proposed PSG was too amorphous to be cognizable. The IJ further explained that Rivera failed to establish that the gang members were motivated on account of her or E.D.C.R.'s purported PSGs. In particular, the IJ highlighted that the gang members also threatened E.D.C.R.'s father, who was not a part of either alleged PSG. Finally, the IJ determined that Petitioners failed to demonstrate that the government of El Salvador was unwilling or unable to control the gang members.

Petitioners appealed to the BIA. In their notice of appeal, they asserted that the IJ erred when it denied their asylum, withholding of removal, and CAT claims. That said, their brief only raised the asylum issue, arguing that Petitioners demonstrated past persecution, PSG cognizability and nexus, and that the Salvadoran government was unable or unwilling to protect them. Petitioners' brief did not address withholding of removal or CAT protection.

A single member of the BIA dismissed Petitioners' appeal. The BIA affirmed the IJ's determination that Petitioners did not establish that their persecution was on account of their proposed PSGs. The BIA noted that Rivera's testimony did not connect the gang members' threats with Rivera being a female head of household. Instead, the BIA highlighted Rivera's attempt to remove the graffiti from her house and refusal to speak with the jailed gang member as potential reasons for the gang members' threat. Thus, the BIA affirmed the IJ's determination that Petitioners failed to meet their burden of proof for asylum and withholding of removal.

In a footnote, the BIA explained that because Petitioners had "not meaningfully challenged the [IJ's] denial of their request for protection under the CAT," the issue was "waived on appeal." J.A. 3 n.2. Petitioners asked this court for review.

## II.

We may not disturb the BIA's determinations on asylum eligibility and withholding of removal if those determinations are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011). Whether Petitioners have demonstrated a nexus between their protected grounds and alleged persecution is a factual question, which we review for substantial evidence. *Madrid-Montoya v. Garland*, 52 F.4th 175, 179 (4th Cir. 2022). Still, we have often explained that applicants for asylum and withholding of removal are "entitled to know that agency adjudicators reviewed all [of their] evidence, understood it, and had a cogent, articulable basis for its determination that [their] evidence was insufficient." *Orellana v. Barr*, 925 F.3d 145, 153 (4th Cir. 2019) (internal quotation marks omitted). Additionally, we "review the denial of relief under the CAT for substantial evidence." *Lizama v. Holder*, 629 F.3d 440, 449 (4th Cir. 2011).

## III.

### A.

As to Petitioners' asylum claim, we begin with Petitioners' argument that the IJ failed to develop the record by not adequately clarifying the facts surrounding Petitioners' PSG and nexus. Respondent argues that Petitioners failed to exhaust this argument by not arguing it before the BIA. Respondent is correct. Because Petitioners did not argue that

6

the IJ failed to develop the record in their brief to the BIA, Petitioners failed to exhaust their claim and therefore waived it on appeal.

A petitioner must exhaust all administrative remedies before petitioning for review of a final order of removal. 8 U.S.C. § 1252(d)(1). Although § 1251(d)(1)'s rule is no longer jurisdictional, it remains a "mandatory claim-processing rule" and when invoked by Respondent, the rule serves as a basis to deny review of an argument not raised before the BIA. *Tepas v. Garland*, 73 F.4th 208, 213–14 (4th Cir. 2023). When Petitioners did not make this argument in their brief before the BIA, leading the BIA to not address the argument, they failed to exhaust their administrative remedies. *Id.* at 214. And because Respondent has properly invoked the exhaustion requirement, we decline to consider Petitioners' argument.

B.

Petitioners also challenge the denial of their asylum applications by arguing that the BIA's nexus finding was not supported by substantial evidence because the BIA disregarded country condition evidence. To qualify for asylum, Petitioners must prove they (1) have a "well-founded fear of persecution;" (2) "on account of a protected ground;" (3) "by an organization that the Salvadoran government is unable or unwilling to control." *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015). "Persecution occurs 'on account of' a protected ground if that ground serves as 'at least one central reason for' the feared persecution." *Toledo-Vasquez v. Garland*, 27 F.4th 281, 286 (4th Cir. 2022) (quoting *Hernandez-Avalos*, 784 F.3d at 949). To establish nexus, the protected ground need not be the central reason for the persecution, but it must be more than an "incidental,

7

tangential, superficial, or subordinate reason" for the persecution. *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009) (internal quotation marks omitted).

When analyzing whether Rivera met the nexus requirement, the BIA highlighted that the gang members first threatened Rivera because she tried to remove their graffiti from her house. When she refused to speak with the gang member in jail, they threatened her again. The BIA concluded that Rivera provided no other reason as to why she was being targeted by the gang. Thus, the BIA held that the record did not support that the gang was motivated by Rivera's status as a Salvadoran female head of household raising a minor child -- her alleged PSG. In response, Petitioners point to country condition evidence that indicates gang members often threaten female heads of households when they disrespect the gangs.

Along these same lines, Petitioners liken this case to *Hernandez-Avalos*. In *Hernandez-Avalos*, gang members threatened a mother who interfered with the gang recruiting her son. 784 F.3d at 947. The mother argued that the gang threatened her on account of her maternal relationship to her son. We agreed and held that the reason the gang threatened the mother "rather than another person, [was] because of her family connection to her son." *Id.* at 950. Petitioners argue that the gang threatening the mother in *Hernandez-Avalos* demonstrates that gangs threaten female heads of households. But in *Hernandez-Avalos*, the gang members targeted the woman because she resisted the gang recruiting her son. And there, the proposed PSG was membership in her nuclear family -- which included her son. That is not the case here.

8

Here, per her own testimony, the gang targeted Rivera because she removed their graffiti from her home and refused to speak with a jailed gang member. Rivera's testimony did not tie the gang targeting her to her proposed PSG of female heads of households with minor children. Despite Petitioners' country condition reports, substantial evidence does not mandate reversal because Rivera's testimony supports the conclusions of the IJ and BIA. *See Toledo-Vasquez*, 27 F.4th at 288 (upholding the IJ and BIA's nexus finding when "[Petitioner's] testimony support[ed] the conclusions of the [IJ] and the [BIA]").

As to whether E.D.C.R.'s persecution was on account of his proposed PSG -- members of Rivera's family -- Petitioners argue that the BIA conflated the persecution prong with the nexus analysis. Specifically, Petitioners point to the BIA's opinion which concluded that the "record is devoid of any evidence that the gang member ever threatened [E.D.C.R.]" J.A. 4. On appeal, Petitioners do not explain how the record supports the conclusion that E.D.C.R. was threatened because he is Rivera's son. Thus, the record does not indicate, let alone compel, a nexus finding in E.D.C.R.'s case.

Substantial evidence supports the BIA's finding that Petitioners failed to meet their burden of proving that their persecution was on account of their proposed PSGs. And because the nexus finding disposes of Petitioners' asylum claim, we need not address Petitioners' remaining challenges to the IJ's findings on past persecution, PSG cognizability, or El Salvador's ability or willingness to control private actors.

## C.

Petitioners argue that they are entitled to withholding of removal based on the same ground they state in support of their asylum claim. In order to state a successful

9

withholding of removal claim, a petitioner must present evidence demonstrating a clear probability of persecution -- a similar but higher burden of proof than that required to establish asylum eligibility. *Marynenka v. Holder*, 592 F.3d 594, 600 (4th Cir. 2010). Therefore, an "applicant 'who has failed to establish the less stringent well-founded fear standard of proof required for asylum relief is necessarily also unable to establish an entitlement to withholding of removal.'" *Id.* at 600 (quoting *Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008)). Because Petitioners cannot meet their burden to establish nexus on their asylum claims, they necessarily fail to meet the heightened burden for withholding of removal.

### D.

Finally, Petitioners argue that the BIA abused its discretion in finding that they are ineligible for CAT protection. In their view, CAT protection is mandatory when there is evidence in the record of a likelihood of torture. Pet'rs' Opening Br. 19. *But see* 8 C.F.R. § 208.16(c)(2) (requiring an applicant to establish that it is "more likely than not that he or she would be tortured"). Respondent argues that Petitioners waived their CAT claim because they failed to include their CAT argument in their brief before the BIA. In response, Petitioners maintain that by raising the CAT issue in their notice of appeal to the BIA, they did not waive it.

As explained above, Petitioners must exhaust all administrative remedies before petitioning for review of a final order of removal. 8 U.S.C. § 1252(d)(1). And when invoked by Respondent, exhaustion serves as a basis to deny review of an argument not raised before the BIA. *See Tepas*, 73 F.4th at 213–14. Petitioners included their argument

10

that the IJ erred in denying them CAT protection in the body of their notice of appeal to the BIA. However, in doing so, Petitioners checked the box indicating that they intended to file a "separate written brief or statement . . . ." J.A. 39. And in their brief to the BIA, they never addressed their CAT claim. The BIA then deemed their CAT claim waived on appeal. We agree. In failing to make the CAT argument in their brief, Petitioners failed to exhaust their administrative remedies. *Tepas*, 74 F.4th at 214. And because Respondent has properly invoked the exhaustion requirement, we decline to consider this argument.

## IV.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in the decisional process. For the foregoing reasons, the petition for review is

*DENIED.*

11