**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1808

JOSE LINCE LOPEZ-BENITEZ,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: October 24, 2023                  Decided: January 30, 2024

Before WILKINSON, AGEE, and RICHARDSON, Circuit Judges.

Petition denied by published opinion. Judge Richardson wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

**ARGUED:** Ivan Yacub, YACUB LAW OFFICES, LLC, Woodbridge, Virginia, for Petitioner. Allison Frayer, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Brian M. Boynton, Acting Assistant Attorney General, James A. Hurley, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

RICHARDSON, Circuit Judge:

Jose Lince Lopez-Benitez petitions for judicial review of the Board of Immigration Appeals' action. The Board upheld an Immigration Judge's decision to deny Lopez asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), and ordered Lopez removed. But the Board and Immigration Judge properly determined that Lopez failed to show that his alleged persecution was on account of his membership in a protected group. So he doesn't qualify for asylum or withholding of removal. And Lopez failed to exhaust administrative remedies for his CAT claim. We therefore deny his petition.

## I.    Background

In 2013, Lopez, a native of El Salvador, illegally entered the United States and was apprehended by the Department of Homeland Security. A month later, he requested an interview to determine whether he had a credible fear of persecution or torture in El Salvador.

During that interview, Lopez informed the asylum officer that his parents live in the United States and his father has legal status. When asked about El Salvador, Lopez explained that "the situation is very dangerous there." J.A. 584. While he had never been physically harmed, the gang MS-13 "would ask [him] for money." J.A. 584–85. Lopez complied with the requests out of fear because the gang members told him that "if [he] didn't give [them] the money they would beat [him] and murder [him]." J.A. 585. But the gang never harmed Lopez in any other way; it "just threatened [him] and took [his] money." *Id*.

2

Lopez explained that MS-13 extorted him because it needed money "to buy drugs" and "thought [he] had a lot of money with [him]." J.A. 585. The gang members may have thought that because "they saw [he] was dressed well" or "because they found out that [his] parents were in the U.S. and in their minds they thought [he] had money." *Id*. But Lopez noted that he was not MS-13's only extortion victim. In fact, "a lot of people that live[d] close to [him] were also victims . . . , not only [him]." *Id*. Lopez never reported the extortion to the police, and it was the only harm he suffered in his home country. As a result of this interview, the asylum officer determined Lopez had a credible fear of torture.

Lopez was charged with being present in the United States without being admitted or paroled and was issued a Notice to Appear to determine the validity of his asylum claim. So he formally applied for asylum, withholding of removal, and protection under the CAT.

Then came Lopez's removal hearing in front of an Immigration Judge. There, Lopez asserted that his alleged persecution was on account of his membership in two particular social groups: (1) the "family of Noel Dubert Lopez Gonzalez," Lopez's father; and (2) "Salvadoran males without male protection." J.A. 89.

Lopez was the only witness at the hearing. As for the alleged persecution, Lopez recounted his extortion at the hands of MS-13. He restated his credible-fear-interview testimony about the gang's demands and how he complied out of fear. And he added further detail. The extortion began in 2011, when he was eighteen years old, and occurred approximately once every fifteen days from 2011 to 2013. During that period, Lopez split his time between his grandfather's house and his paternal uncle's house. While he spent Monday through Friday with his uncle, he spent the weekends at his grandfather's.

3

However, Lopez's grandfather was in the United States from 2011 until 2013, so Lopez stayed at his grandfather's house with a female family friend during those years. Lopez also had three other paternal uncles in El Salvador, all of whom remained in El Salvador after Lopez came to the United States. None of these male relatives were ever extorted or physically harmed by MS-13, nor was Lopez's father. In fact, Lopez's grandfather has since moved back to the same town in El Salvador and has had no problems with MS-13.

The only rationale for his extortion that Lopez gave during his removal hearing was that MS-13 extorted "everyone." J.A. 111. This included people outside of Lopez's father's family and people whose fathers lived in El Salvador. He did not mention the gang's alleged knowledge of his father's presence in the United States.

Along with his testimony, Lopez submitted several country reports about El Salvador. The reports emphasized the prevalence of gang violence in the country, including that gangs often threaten families to induce compliance with their demands.

Following Lopez's testimony, the Immigration Judge issued an oral decision. Although he found Lopez's testimony credible, the Immigration Judge denied Lopez's claims for asylum, withholding of removal, and CAT relief.

As to asylum and withholding of removal, the Immigration Judge first determined that the alleged social group of "Salvadoran males without male protection" was not cognizable and, even if it was, Lopez hadn't established that he was a part of that group. That was because Lopez primarily lived with his uncles during the time he was extorted. But the Immigration Judge did find that the social group of Lopez's father's family was cognizable and that Lopez was a member of the group.

4

Then the Immigration Judge decided that Lopez had not established that his extortion constituted past persecution or that he had a reasonable fear of future persecution. Regardless of that conclusion, however, the Immigration Judge found the extortion was not on account of Lopez's membership in his father's family. In other words, the Immigration Judge found an insufficient causal nexus between the alleged persecution and Lopez's social group. Rather than being on account of Lopez's membership in his father's family, Lopez's extortion occurred because "the MS gang extorted everyone." J.A. 45. And, because Lopez failed to establish a claim of asylum, the Immigration Judge also determined Lopez didn't qualify for withholding of removal.

The Immigration Judge similarly found Lopez hadn't met his burden for CAT relief. According to the Immigration Judge, Lopez hadn't shown it was "more likely than not that he would be tortured in the future in El Salvador with the consent or acquiescence of the government." J.A. 47.

Lopez subsequently appealed to the Board. But the Board dismissed Lopez's appeal. It first noted that the Immigration Judge erred in his legal analysis that led to the finding that Lopez hadn't established past persecution, but the Board still determined the finding was appropriate under the correct legal standard.[1]

---

[1] In his order, the Immigration Judge stated "that extortion is not a recognized . . . ground for asylum." J.A. 46. But the Board acknowledged extortion is a recognized ground for asylum so long as it is sufficiently severe. J.A. 9 (citing *Olivia v. Lynch*, 807 F.3d 53, 59 (4th Cir. 2015)). The Board concluded that the Immigration Judge's finding was still not in error, however, because the Immigration Judge correctly "found" the threats Lopez described to be "vague" rather than severe. *Id*. As noted later, we need not decide whether the Board was right because we deny Lopez's petition on other grounds.

Next, the Board upheld the Immigration Judge's determination that Lopez failed to establish a nexus between the extortion and his membership in his father's family. Far from making the requisite showing that he "ha[d] been or would be singled out on account of a protected ground," Lopez only showed "that gangs extort[ed] many different types of people in his community, including families and single households." J.A. 10.

Lastly, the Board stated that Lopez didn't raise arguments against the Immigration Judge's decisions on the social group "Salvadoran males without male protection" or CAT relief, so he forfeited whatever arguments he may have had on both issues. The Board thus dismissed Lopez's appeal. Then Lopez petitioned for our review.

## II. Discussion

In seeking our review, Lopez faces an uphill battle because the Department of Justice's decision denying asylum is "conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). So the decision stands if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Tassi v. Holder*, 660 F.3d 710, 719 (4th Cir. 2011). And while we review legal conclusions *de novo*, *Portillo Flores v. Garland*, 3 F.4th 615, 625 (4th Cir. 2021) (en banc), factual findings are "conclusive unless the evidence was such that *any* reasonable adjudicator would have been *compelled* to a contrary view," *Tassi*, 660 F.3d at 719 (emphasis added); 8 U.S.C. § 1252(b)(4)(B). Put differently, "it is not our task to 'reweigh the evidence and determine which of the competing views is more compelling'" but merely to "ensure that

6

substantial evidence supports the B[oard's] judgment." *Ngarurih v. Ashcroft*, 371 F.3d 182, 189 (4th Cir. 2004) (quoting *Gonahasa v. I.N.S.*, 181 F.3d 538, 542 (4th Cir. 1999)).

Lopez fails to overcome this high bar as to his claims for asylum and withholding of removal. And he didn't exhaust administrative remedies for his CAT claim.

**A.      The Department did not err in determining Lopez did not establish the requirements for asylum or withholding of removal.**

Under the Immigration and Nationality Act, the Attorney General can grant asylum to any "refugee." 8 U.S.C. § 1158(b)(1)(A). To qualify as a "refugee," an applicant bears the burden of showing he is "unable or unwilling to return to" his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." § 1101(a)(42)(A). If an applicant fails to meet these requirements, he "[n]ecessarily . . . will be unable to satisfy the higher standard for showing withholding of removal." *Mulyani v. Holder*, 771 F.3d 190, 198 (4th Cir. 2014) (quoting *Mirisawo v. Holder*, 599 F.3d 391, 396 (4th Cir. 2010)). That higher standard is "a *clear probability* of persecution on account of [one's] race, religion, nationality, membership in a social group, or political opinion." *Mirisawo*, 599 F.3d at 396 (quoting *Abdel-Rahman v. Gonzales*, 493 F.3d 444, 449 (4th Cir. 2007)).

Because the Board "essentially adopted the [Immigration Judge]'s opinion" as to nexus "while adding some of its own reasoning," we review both decisions. *Mulyani*, 771 F.3d at 196 (quoting *Thu v. Holder*, 596 F.3d 994, 998 (8th Cir. 2010)).

7

Lopez argues that the Board and Immigration Judge erred in concluding that he failed to satisfy the requirements of asylum and withholding of removal because they wrongfully (1) determined that Lopez's extortion didn't establish past persecution or a credible fear of future persecution; and (2) found that Lopez failed to show that persecution was on "account of" his membership in a social group. But we need not decide whether Lopez would succeed on his first argument because, even if Lopez established persecution, the finding that he didn't establish nexus was supported by substantial evidence. That makes him ineligible for asylum and withholding of removal.

An applicant establishes nexus if he can show that his membership in a particular social group "was or will at least be one central reason for" his persecution. *Velasquez v. Sessions*, 866 F.3d 188, 194 (4th Cir. 2017) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). Put differently, although an applicant "need not show" his protected status "provide[s] the central reason or even a dominant central reason for h[is] persecution," he must show that it is "more than an incidental, tangential, superficial, or subordinate reason for h[is] persecution." *Id*. (quoting *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015)).

The Board did not review the Immigration Judge's determination as to Lopez's alleged social group of "Salvadoran males without male protection" because Lopez didn't raise the issue to the Board. The requirement that an alien seeking judicial review of a removal order first exhaust administrative remedies, while not jurisdictional, is nonetheless

8

mandatory.  *See Tepas v. Garland*, 73 F.4th 208, 213 (4th Cir. 2023) (citing *Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023)).  So we cannot review the issue.

That leaves us to ask whether the Immigration Judge and Board erred in determining that Lopez did not show a nexus between his extortion and his membership in his father's family.  Lopez asserts that the Immigration Judge and Board committed legal error because they did not "consider why the applicant and not someone else was targeted by their persecutors" and "instead considered whether other people outside the group were targeted in general."  Petitioner's Br. at 25.  And he is correct that a nexus analysis must focus on why the applicant was the target of the persecution "*and not some other person*."  *Perez Vasquez v. Garland*, 4 F.4th 213, 222 (4th Cir. 2021) (quoting *Hernandez-Cartagena v. Barr*, 977 F.3d 316, 322 (4th Cir. 2020)).  According to Lopez, the evidence showed that MS-13 extorted many people, but the gang extorted *him* because it knew his father was in the United States and was sending remittances.

But the Immigration Judge and Board did not commit legal error because Lopez did not submit evidence that he was targeted on account of his family.  *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992) ("[S]ince the statute makes motive critical, [an asylum applicant] must provide *some* evidence of it, direct or circumstantial.  And if he seeks to obtain judicial reversal of the B[oard]'s determination, he must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.").  True, he testified once that his father's presence in the United States was the reason why MS-13 targeted him.  But Lopez provided no evidence to support this single contention.  And nothing in the record outside his bare assertion

9

showed that MS-13 knew Lopez's father was in the United States or that it assumed Lopez was consequently receiving money. For example, Lopez did not testify that the gang members told him they were targeting him because of his father's presence in the United States or that the gang's extortion attempts immediately followed Lopez's receipt of money. *See Perez Vasquez*, 4 F.4th at 218, 222. In fact, he did not submit any documentation that showed his father sent him money at all. Plus, Lopez testified that no one else in his father's family, such as his uncles or grandfather, were targets of MS-13's extortion efforts. If Lopez's "family membership was the reason for [the gang's] persecution, they should have been targeted," too. *See Toledo-Vasquez v. Garland*, 27 F.4th 281, 287–88 (4th Cir. 2022)

So all the Immigration Judge and Board had to suggest MS-13 extorted Lopez because his father was in the United States was an isolated and unsupported declaration. The rest of the evidence suggested that MS-13 extorted Lopez because the gang extorted indiscriminately. That was the explanation that Lopez himself offered most consistently. This evidence makes apparent that, when the Immigration Judge and Board mentioned that "people outside of the respondent's family" were extorted and that "gangs extort[ed] many different types of people in [Lopez's] community," J.A. 10, 45, they did not commit legal error by impermissibly focusing on others rather than Lopez. Instead, they were explaining that the evidence most supported a finding that the only central reason that Lopez was targeted was because everyone was. *See Toledo-Vasquez*, 27 F.4th at 287–88 (upholding

10

the Department's finding of no nexus where the record indicated petitioner's aggressor was "an equal opportunity persecutor").

The evidence in the record did not compel an opposite finding. *Tassi*, 660 F.3d at 719. Quite the contrary: The only thing suggesting a nexus between the extortion and Lopez's family membership was Lopez's once-uttered statement.[2] That wouldn't be enough to compel a finding that the nexus was established, even if the Immigration Judge and Board were required to take every word a credible witness says as truth. *See Garland v. Ming Dai*, 141 S. Ct. 1669, 1681 (2021) ("It's not always the case that credibility equals factual accuracy, nor does it guarantee a legal victory."). At most, the evidence suggested that Lopez's membership in his father's family was "an incidental, tangential, superficial, or subordinate reason for h[is] persecution." *Velasquez*, 866 F.3d at 194 (quoting *Hernandez-Avalos*, 784 F.3d at 949).

In sum, the Immigration Judge and Board's determination that Lopez failed to establish nexus between his claimed social group and his extortion was not in legal error and was supported by substantial evidence. Such a nexus is required for Lopez to be eligible for both asylum and withholding of removal. So the Immigration Judge and Board did not err in concluding Lopez qualified for neither form of relief.

---

[2] The country reports Lopez introduced do not support a nexus finding, either. The reports state that families are targeted by gangs, but Lopez provided no evidence that supports a finding that his own extortion fell within that category.

11

**B.      Lopez failed to exhaust administrative remedies for his CAT claim.**

Lopez also petitions for review of the Immigration Judge's determination that he did not establish eligibility for relief under the CAT.  The Board, however, determined that Lopez forfeited his CAT claim by not raising it in his brief and thus did not reach the issue.  That would keep us from reviewing the issue ourselves.  *Tepas*, 73 F.4th at 213.  To avoid this result, Lopez contends the Board wrongly determined that he didn't raise the issue in his brief.

While an applicant doesn't need to "conjure any 'magic words'" to adequately raise an issue to the Board, his brief must at least "launch[] the appropriate argument."  *Perez Vasquez*, 4 F.4th at 228 (alteration in original) (citations omitted).  The Board correctly determined Lopez failed to do so for his CAT claim.  His brief only mentioned the CAT in its introduction and statement of the facts.  It never laid out the legal requirements for the CAT, nor did it challenge the Immigration Judge's determination that Lopez didn't meet said requirements.  So Lopez's brief didn't sufficiently raise the issue.  *See id.* (holding that petitioner did not adequately raise a CAT claim to the Board when his brief did not "include[] any argument regarding" the claim "or cite[] any relevant case law").

Because he did not raise his CAT claim to the Board, Lopez did not exhaust administrative remedies for the claim.  So we deny his petition to review it.  *Tepas*, 73 F.4th at 213.

\*               \*               \*

Lopez fails to overcome the "narrow and deferential" standard of review that applies to our oversight of the Department of Justice's immigration decisions.  *Djadjou v. Holder*,

662 F.3d 265, 273 (4th Cir. 2011).  The Department's decisions to deny him asylum, withholding of removal, and relief under the CAT were legally sound and supported by substantial evidence.  As a result, the orders must stand.  Lopez's petition is thus

*DENIED.*