**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-2210**

MARIA SARAI CORTEZ PINEDA,

Petitioner,

v.

PAMELA JO BONDI, Attorney General,

Respondent.

------------------------------

AMERICAN IMMIGRATION LAWYERS ASSOCIATION; AMICA CENTER FOR IMMIGRANT RIGHTS; CENTER FOR GENDER & REFUGEE STUDIES; CHARLOTTE CENTER FOR LEGAL ADVOCACY; IMMIGRATION LAW CLINICS; JUST NEIGHBORS; PISGAH LEGAL SERVICES; TAHIRIH JUSTICE CENTER,

Amici Supporting Petitioner.

On Petition for Review of an Order of the Board of Immigration Appeals.

Submitted: September 22, 2025                    Decided: February 4, 2026

Before QUATTLEBAUM, Circuit Judge, and TRAXLER and FLOYD, Senior Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

2

**ON BRIEF:** Evelyn R.G. Smallwood, Mary Elizabeth Reed, HATCH ROCKERS IMMIGRATION, Durham, North Carolina, for Petitioner. Yaakov M. Roth, Acting Assistant Attorney General, Stephen J. Flynn, Assistant Director, Arthur R. Rabin, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Maria Cortez Pineda petitions for review of the order of the Board of Immigration Appeals upholding the immigration judge's denial of her application seeking asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Finding no reversible error, we deny the petition for review.

I.

Cortez is a native and citizen of El Salvador. In 2014, Cortez was a 21-year-old college student studying computer science. Travel to her school involved a long walk through an isolated area to catch a bus.

One day in January 2014, Cortez began her walk home, in the dark, after the bus ride. Cortez heard a car approaching from behind. Two men wearing masks grabbed her, blindfolded her, bound her hands and mouth, and threw her in the car. They drove her to another location and took her inside a house, where each of the men raped her. Afterwards, the men put her back in the car and tossed her out on the street near where she had been walking. The men told Cortez that they would kill her and her family if she reported the rape to the police. Cortez walked home and told her parents, a cousin, and a friend about the rape. Because she feared retribution, she did not go to a hospital or report the rape to the police. Cortez explained that "whenever you go to the hospital, the doctor will file a report without your permission. And then the police will arrive and then the police will arrest you because the police [have] a connection with the gang." J.A. 92.

Cortez did not know who raped her—she did not recognize their voices, nor did she recognize the house to which she had been taken, but she believed that her assailants were

3

gang members. A week or so after the rape, Cortez's friend told her that men had shown up on campus looking for Cortez, who happened to be absent that day. Cortez's friend was afraid of the men and believed them to be gang members because of their tattoos. Moreover, a few months before the rape, gang members had boarded Cortez's bus and robbed everyone. Cortez testified that the gang members took her purse and identification that day and "didn't leave anyone with anything." J.A. 113. Because the items stolen from her showed her name and where she was in school, Cortez believed that the gang members who robbed the bus were the same men who raped her and later asked about her on campus. Cortez herself was never approached by anyone at school, but on at least one occasion she saw men come to her house and try to look inside.

Cortez became pregnant as a result of the rape. When she was five months' pregnant, Cortez left El Salvador for the United States, where her older siblings and other relatives were already living. Cortez was intercepted and detained by immigration officers within minutes after crossing into the United States. Cortez was processed for expedited removal and, in light of her pregnancy, paroled into the country under an order of supervision pending execution of the removal order. The expedited removal order was subsequently vacated, and Cortez's case was referred to Immigration Court for a full hearing.

In her application seeking asylum, withholding of removal, and protection under the CAT, Cortez contended she had suffered past persecution (the rape) and had a well-founded fear of future persecution because of her membership in four particular social groups--"Salvadoran women and girls of childbearing age"; "Salvadoran single mothers (or Salvadoran female heads of household)"; "Salvadoran single mothers (or female heads

4

of household) living under the control of gangs"; and "Salvadoran women." J.A. 230-32. At the hearing, Cortez testified that she feared the gang members who had raped her, that the corrupt police would not protect her from the gangs, and that she would be mistreated and abused by Salvadoran men because she is a single mother. She also testified that she feared returning to El Salvador because of its strict laws banning abortion. She testified that women who suffer a miscarriage are sometimes jailed on the belief that the miscarriage was intentionally induced.

The immigration judge (IJ) found Cortez removable and denied her application for protection and relief.[1] The Board of Immigration Appeals (BIA) upheld the decision of the IJ and dismissed Cortez's appeal. Cortez now petitions this court for review of the Board's decision.

## II.

"Upon a petition for review of a final BIA order, this Court reviews all factual findings for substantial evidence, and all legal conclusions de novo." *Moreno-Osorio v. Garland*, 2 F.4th 245, 251–52 (4th Cir. 2021). In cases like this one, where "the BIA issues its own detailed opinion affirming the IJ with further reasoning of its own but without

---

[1] In the administrative proceedings below, the government questioned the timeliness of Cortez's application, which was filed in 2017. After considering Cortez's evidence showing that she hired an attorney in September 2014 to file an asylum petition, but the attorney failed to do so, the immigration judge found the application to be timely, concluding that the ineffective assistance of immigration counsel operated to toll the one-year filing deadline. *See* 8 U.S.C. § 1158(a)(2)(D) (untimely filing may be excused upon a showing of changed or extraordinary circumstances); 8 C.F.R. 1208.4(a)(5)(iii) ("extraordinary circumstances" include the "[i]neffective assistance of counsel"). The government does not challenge the timeliness ruling.

expressly adopting the IJ's opinion, we focus our review on the BIA order." *Rivas de Nolasco v. Bondi*, 150 F.4th 350, 357 (4th Cir. 2025) (cleaned up).

A.

1.

Under the Immigration and Nationality Act, the Attorney General may confer asylum on a "refugee," which is defined as a person unwilling or unable to return to her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "The asylum-seeker bears the burden of demonstrating her refugee status," *Velasquez v. Sessions*, 866 F.3d 188, 193 (4th Cir. 2017), and must demonstrate a well-founded fear of persecution on account of a protected ground because of a threat by the government or by an organization the government is unable or unwilling to control, *id.* at 194.

"[W]ithholding of removal covers a narrower . . . set of circumstances than asylum," and requires the applicant to "demonstrate a clear probability of persecution." *Yi Ni v. Holder*, 613 F.3d 415, 427 (4th Cir. 2010) (cleaned up). Because of the higher evidentiary threshold, "an applicant who is ineligible for asylum is necessarily ineligible for withholding of removal." *Id.* (cleaned up).

Under the standard developed by the BIA, a proposed social group qualifies as a "particular social group" if "(1) its members share common, immutable characteristics, (2) the common characteristics give its members social visibility, and (3) the group is defined with sufficient particularity to delimit its membership." *Lizama v. Holder*, 629 F.3d 440,

6

447 (4th Cir. 2011) (collecting cases). Applying the BIA standards, the IJ first concluded that none of the social groups proposed by Cortez were cognizable because they lacked social distinction. The IJ alternatively concluded that, even if the proposed groups were cognizable, Cortez had not proven a nexus between her membership in the groups and the violence she experienced and feared in the future. As to the rape, the IJ found that it was a condemnable act of private violence, but that Cortez had not established that her assailants attacked her as a result of her membership in the proposed social groups. As to Cortez's claim that, because she is a woman of childbearing age, she might be arrested if she were to suffer a miscarriage, the IJ found that fear to be "much too speculative" to amount to a well-founded fear of future persecution. J.A. 52. The IJ therefore determined that Cortez could not satisfy the requirements for asylum or the more stringent standards for withholding of removal.

The BIA upheld the IJ's decision and dismissed Cortez's appeal. The BIA concluded that Cortez's proposed social groups were insufficiently particular, finding the groups to be "overbroad, amorphous and diffuse, [and] lacking sufficient limiting characteristics to provide clear benchmarks for who fall within the group and who does not." J.A. 4. The BIA also found that the groups were not socially distinct, as Cortez's evidence did not show that the members of her proposed groups "are perceived as distinct groups in society or at greater risk than anyone else living in El Salvador." *Id.*

The BIA likewise upheld the IJ's alternate ruling that Cortez had not shown a nexus between the harms she feared and her proposed social groups. The BIA determined that Cortez's abduction and rape "involved private acts of violence unrelated to a protected

7

ground" and that Cortez failed "to demonstrate past persecution on account of a protected ground or a well-founded fear of future persecution." J.A. 5. Because Cortez failed to prove nexus, the BIA denied her claims for asylum and withholding of removal.

2.

Cortez challenges the denial of her asylum and withholding of removal claims, focusing primarily on arguments that her proposed social groups are cognizable and that she established a nexus between her proposed social groups and the harm she suffered.[2] Cortez contends that her proposed social groups are cognizable under the BIA's current three-factor test for determining whether the petitioner is a member of a "particular social group." But even if the groups are not cognizable under the BIA's current test, Cortez notes that this court is no longer required to give deference to the BIA's interpretation of the governing statutes. *See Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). Cortez thus urges us to reject the BIA's three-factor standard and instead conclude that immutability is the only requirement for establishing a "particular social group." Under that single-element test, Cortez argues that her proposed social groups of

---

[2]    The decisions of the IJ and the BIA were sufficiently detailed to permit judicial review, and we therefore reject Cortez's claims that the IJ's and BIA's analyses of her proposed social groups and explanations of their rulings were inadequate and that the IJ and the Board failed to properly consider her county-conditions evidence as it related to her proposed social groups. *See Nolasco v. Garland*, 7 F.4th 180, 190 (4th Cir. 2021) ("We presume that, in reaching their conclusions, the IJ and the BIA reviewed the evidence presented to them and made their decisions based on the relevant evidence. The BIA and IJ are not required to discuss every piece of evidence in the record, but they must announce their decisions in terms sufficient to enable a reviewing court to perceive that they have heard and thought and not merely reacted.") (cleaned up).

"Salvadoran women" and "Salvadoran single mothers" are cognizable social groups, as members all share the immutable characteristic of gender.[3] *See, e.g., Hassan v. Gonzales*, 484 F.3d 513, 518 (8th Cir. 2007) ("[G]enital mutilation occurs to a particular individual because she is a female. That is, possession of the immutable trait of being female is a motivating factor—if not a but-for cause-of the persecution. We, therefore, conclude that Hassan was persecuted on account of her membership in a particular social group, Somali females.") (cleaned up); *Mohammed v. Gonzales*, 400 F.3d 785, 798 (9th Cir. 2005) (same).

This court has not yet addressed this issue, and it is unnecessary for us to do so in this case. *See, e.g., Alfaro-Zelaya v. Bondi*, 157 F.4th 587, 592, 595 (4th Cir. 2025) (assuming without deciding that petitioner's proposed particular social groups of "Honduran women" and "unmarried mothers in Honduras" were cognizable) (cleaned up). Although the BIA held that Cortez's proposed groups were not cognizable, it also concluded that even if the groups were cognizable, her claims still failed because Cortez's evidence did not establish a nexus between her membership in the proposed groups and the mistreatment she suffered and fears. As we will explain, our standard of review requires us to accept that conclusion, and it forecloses Cortez's claims for asylum and withholding of removal.

"Persecution occurs 'on account of' a protected ground if that ground serves as 'at least one central reason for' the feared persecution." *Cedillos-Cedillos v. Barr*, 962 F.3d

---

[3] In their brief, *amici* likewise argue that "particular social group" should be defined by the single element of immutability and that "Salvadoran women" qualifies as a particular social group.

817, 824 (4th Cir. 2020) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). "A central reason is not necessarily *the* central reason or even a dominant central reason, but it must be more than incidental, tangential, superficial, or subordinate to another reason for harm." *Id.* (cleaned up). Thus, when determining whether an action amounts to persecution on account of a protected ground, the motive of the alleged persecutors is "critical" to the inquiry. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992); *see Paloka v. Holder*, 762 F.3d 191, 198 (2d Cir. 2014) ("[T]he perpetrator's mindset [is] the center of attention" when determining "whether the persecution was 'on account of' the victim's status as a member of the group."). Although "direct proof of [the] persecutors' motives" is not required, the asylum applicant "must provide *some* evidence of it, direct or circumstantial. And if [the applicant] seeks to obtain judicial reversal of the BIA's determination, [she] must show that the evidence [she] presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias-Zacarias*, 502 U.S. at 483-84.

Rape is a terrible, violent crime, but it qualifies as "persecution" under the asylum statute only if the other statutory requirements—including nexus—are met. In this case, however, the record is largely silent as to the motives of Cortez's attackers. She testified that she did not know why her assailants targeted her specifically, and she recounted no statements made by the assailants—either to herself or her friend who was approached on campus—that suggest a motive.

In her brief before the BIA, counsel for Cortez argued generally that the IJ failed to consider the country-conditions evidence when conducting the nexus inquiry. While non-governmental acts of violence or criminal activity can provide the basis for an asylum

10

claim, simply pointing to "[g]eneral conditions of crime and unrest [is] insufficient to establish persecution on account of a protected ground." *Tepas v. Garland*, 73 F.4th 208, 218 (4th Cir. 2023) (cleaned up). Counsel's brief identified no specific evidence from which motive and nexus could be inferred but instead simply asked,

> Was one of the central reasons Ms. Cortez-Pineda was raped because she was a woman? If she were not a woman, would she not have been raped? If the answer to either of these questions is yes, then she has made her case, based on the social group of "Salvadoran women."

J.A. 24. And in her brief before this court, counsel makes the same argument in slightly different form, claiming that Cortez "proved that she was persecuted on account of being a Salvadoran woman," given that she "was kidnapped off the street by two men and raped," which "is an inherently gendered act." Brief of Petitioner at 31.

As these arguments make plain, Cortez's nexus argument is premised not on evidence specific to her case, but on her assertion that rape is an inherently gendered act. "Rape and sexual assault are generally understood today not as sexual acts borne of attraction, but as acts of violent aggression that stem from the perpetrator's power over and desire to harm his victim." *Angoucheva v. I.N.S.*, 106 F.3d 781, 792 n.2 (7th Cir. 1997) (Rovner, J., concurring). Thus, while it may be true that rape most often involves a male attacker and a female victim, determining the motivation of the attacker is a nuanced factual inquiry that requires more than making simplistic gender-based assumptions. It may be that Cortez was attacked because she was a Salvadoran woman; if the BIA had so concluded, the sparse record before this court might be enough to support that conclusion. The BIA, however, did not reach that conclusion, but instead determined that Cortez was simply the

11

victim of a crime of opportunity who was targeted because she was walking alone in the dark in an isolated area. Because the record is sufficient to support that finding, the BIA's factual determination that there was no nexus between the rape and Cortez's proposed social groups must be treated as conclusive. [4] *See Nolasco*, 7 F.4th at 186 ("[E]ven if the record plausibly could support two results, reversal is appropriate only where the evidence not only supports the petitioner's conclusion, but *compels* it.") (cleaned up).[5]

---

[4]    In *Alfaro-Zelaya v. Bondi*, 157 F.4th 587 (4th Cir. 2025), which involved a claim of gender-based persecution arising in Honduras, a panel of this court remanded for further proceedings after concluding that the BIA had not properly considered the petitioner's country-conditions evidence when finding no nexus between the claimed persecution and proposed social groups. *See id.* at 597. Cortez, however, has not identified the BIA's failure to properly consider the country-conditions evidence as an issue on appeal regarding nexus, and we do not believe a remand is required in this case. *See* Fed. R. App. P. 28(a)(8)(A); *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.") (cleaned up).

[5]    Cortez also contends that the no-nexus finding is flawed because the IJ reached that decision by relying on *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018) ("*A-B-I*"), a decision that has since been vacated, *see Matter of A-B-*, 28 I&N Dec. 307, 308–09 (A.G. 2021) ("*A-B-II*"), and the BIA relied on the IJ's flawed analysis when determining that Cortez failed to establish nexus. We disagree.

The decision in *A-B-I* suggested that victims of private criminal activity could satisfy the asylum requirements only in "exceptional circumstances." 27 I. & N. Dec. at 317; *see id.* at 320 ("Generally, claims by aliens pertaining to domestic violence or gang violence perpetrated by non-governmental actors will not qualify for asylum."). In 2021—after the IJ's decision—the Attorney General vacated *A-B-I* because the decision's "broad language could be read to create a strong presumption against asylum claims based on private conduct . . . [and thus] threatens to create confusion and discourage careful case-by-case adjudication of asylum claims." *A-B-II*, 28 I. & N. Dec. at 309. In this case, although the IJ cited *A-B-I*, the IJ did not reject Cortez's claims simply because she was the victim of private crime but because her evidence did not connect the private violence to a protected ground. *See* J.A. 50 ("In this particular case, there's only evidence of private violence. Evidence consistent with acts of private violence that merely show an individual (Continued)

Although we must defer to the BIA's determination that Cortez did not suffer past persecution on account of a protected ground, "it is not necessary for a person seeking asylum or withholding of removal to have suffered past persecution to be eligible for relief. The individual could instead demonstrate eligibility based on a well-founded fear of future persecution on account of a protected ground." *Tepas*, 73 F.4th at 218. We do not believe, however, that the question of future persecution is properly before us.

Before the IJ, Cortez contended that as a Salvadoran woman of child-bearing age, she had a well-founded fear of future persecution because of the possibility that she might be jailed if she suffered a miscarriage. The IJ rejected that argument, finding that it was "completely speculative as to the possibility of her having children in the future, the possibility of having a miscarriage, and then [the] possibility [of] being arrested. . . . [T]hat analysis is much too speculative to the basis of the grant for any asylum relief." J.A. 52.

In her brief to the BIA, however, Cortez did not raise that argument or challenge the IJ's ruling. While she generally contended that she had a well-founded fear of future persecution, that argument was premised primarily on her contention that she had established past persecution on account of her membership in her proposed social groups and was therefore entitled to a presumption of future persecution. Cortez also contended before the BIA that her evidence independently established a well-founded fear of future

---

has been a victim of criminal activity does not constitute evidence of persecution on a statutory protected ground. . . . [Cortez] has not been able to attach the assault to any protected ground."). Under these circumstances, we cannot fault the BIA's determination that any error by the IJ in relying on *A-B-1* was harmless. *See* J.A. 4 n.2.

13

persecution, but that portion of her brief was very brief and very vague and made no mention of the possibility of being jailed if she became pregnant and miscarried, or of the mistreatment of single mothers in El Salvador.[6]

A petitioner seeking judicial review of an order of removal must exhaust all available administrative remedies. *See* 8 U.S.C. § 1252(d)(1). "[A] petitioner exhausts his administrative remedies by raising an argument challenging the IJ's decision in an appeal to the BIA." *Cabrera v. Barr*, 930 F.3d 627, 631 (4th Cir. 2019). Because Cortez did not properly present to the BIA the question of future persecution and the government objects to our consideration of the issue, we cannot consider it in this appeal. *See Santos-Zacaria v. Garland*, 143 S. Ct. 1103, 1110, 1114 (2023) (concluding that the exhaustion requirement set out in § 1252(d)(1) is a mandatory claims-processing rule, not a jurisdictional requirement); *Tepas*, 73 F.4th at 213.

Moreover, even if the question of future persecution had been properly presented to the BIA, Cortez has effectively abandoned the issue here. In her brief to this court, Cortez discusses the record evidence showing the abysmal treatment in El Salvador of women in general and the additional mistreatment suffered by single mothers. *See* Brief of Petitioner at 4, 19, 31-32. And while Cortez argues in passing that her evidence showed "a well-

---

[6]      *See* J.A. 26 ("Ms. Cortez-Pineda specifically testified that she had a future fear for her life if returned to El Salvador. Through her testimony and other record evidence, Ms. Cortez-Pineda demonstrated that she has a well-founded fear such that she is eligible for asylum. Moreover, respondents raising pattern-or-practice claims, *i.e.* claims based on fears of future persecution, need not demonstrate that they would be singled out for persecution.").

14

founded fear of future persecution on account of being a Salvadoran single mother," *id.* at 37, her brief does not include a challenge involving future persecution in the list of issues presented on appeal, *see id.* at 2, and it contains no substantive argument that her evidence independently established a well-founded fear of future persecution. Accordingly, any argument that Cortez's evidence independently established a well-founded fear of future persecution is not before this court. *See Suarez-Valenzuela v. Holder*, 714 F.3d 241, 249 (4th Cir. 2013) (explaining that "it is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned") (cleaned up); *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue.") (cleaned up).

Under these circumstances, our determination that the BIA's no-nexus determination is supported by substantial evidence is dispositive and requires us to reject Cortez's challenge to the BIA's denial of her claim for asylum. And because the asylum claim fails, Cortez's claim for withholding of removal necessarily fails as well.

### B.

"To succeed on a CAT claim, an applicant must show that it is more likely than not that he or she would be tortured in the country of removal." *Herrera-Martinez v. Garland*, 22 F.4th 173, 185 (4th Cir. 2022) (cleaned up). "Torture is (1) any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person in a manner that is (2) by or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* (cleaned up). "The agency's factual findings—including its

15

predictions about the likelihood of future mistreatment and government acquiescence—are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Ponce-Flores v. Garland*, 80 F.4th 480, 484 (4th Cir. 2023) (cleaned up).

The IJ and the BIA concluded that Cortez had not shown the required likelihood of torture or that any mistreatment would be inflicted by or with the acquiescence of a Salvadoran official. After reviewing the record, we find no legal error by the BIA[7] and conclude that substantial evidence supports the denial of relief under the CAT, as the evidence does not compel a ruling contrary to the relevant administrative factual findings. *See Nasrallah v. Barr*, 590 U.S. 573, 584 (2020).

### III.

Accordingly, for the foregoing reasons, we deny the petition for review. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*PETITION FOR REVIEW DENIED*

---

[7]     Contrary to Cortez's argument, the BIA properly applied clear-error review to the IJ's "predictive factual determination" of what was likely to happen if Cortez returned to El Salvador. *Ibarra Chevez v. Garland*, 31 F.4th 279, 291 (4th Cir. 2022).

16